R. E. HUGHES, Appellant,

v.

Paul H. CHAPMAN, Appellee.

Paul H. CHAPMAN, Cross-Appellant,

v.

R. E. HUGHES, Cross-Appellee.

No. 17824.

United States Court of Appeals
Fifth Circuit.

Dec. 1, 1959.

Rehearing Denied Dec. 30, 1959.

Edward I. Cutler, Tampa, Fla., for appellant.

Charles E. Early, Sarasota, Fla., for appellee.

Before HUTCHESON, TUTTLE and WISDOM, Circuit Judges.

TUTTLE, Circuit Judge.

Appellant is here complaining of a judgment awarding appellee the amount of the agreed commission for the sale of a radio station, including transfer of a lease to real estate, notwithstanding the fact that the broker was not a licensed real estate broker under the Florida laws.

*The basic facts are not in dispute.* Chapman obtained a written contract as a Media Broker [1] to offer for sale for $50,000 Hughes' radio station WTWB at Auburndale, Florida. The station was physically situated on property leased for 99 years for annual rental of $300 per year. There was a tenant house rented for a similar amount on the land and there was a station building worth some $10,000 which had been built by the lessee, together with aerial and necessary land improvements. The agreed commission was 10% of the sales price. No description of the property or business to be sold was contained in the listing agreement, which merely referred to it as "Station WTWB." The transfer of a radio station is subject to the grant of permission by the Federal Communication Commission. The most valuable asset in such a station is the "franchise" or certificate from the F.C.C. granting the privilege of using the assigned wave length and power. The parties both recognized before the sale was completed that an assignment of the lease to the land was a part of the transaction.

Upon the satisfactory completion of the sale by Chapman, Hughes refused to pay the commission, who defended solely on the ground that the contract called for the performance of an illegal act and this voided the contract.

The Florida statute requiring the licensing of real estate brokers, so far as here relevant, is:

"§ 475.41: No contract for a commission or compensation for any act or service enumerated in subsection (2) of § 475.01 shall be valid unless the broker or salesman shall have complied with this chapter in regard to registration and renewal of the certificate at the time the act or service was performed."

"§ 475.01(2): Every person who shall, in this state, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or implied, or with an intent to collect or receive a compensation or valuable consideration therefor, * * * sell, exchange, buy or rent, or offer, attempt to agree to * * * negotiate the sale, exchange, purchase or rental of any real property, or any interest in or concerning the same, including * * * leases; * * * and every person who shall take any part of the procuring of sellers, purchasers, lessors or lessees of the real property, or interest therein, including * * * leases, of another; or who shall direct or assist in the procuring of prospects, or the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who shall receive, expect, or be promised any compensation or valuable consideration, directly or indirectly therefor * * * shall be deemed and held to be a 'real estate broker' or a 'real estate salesman,' as hereinafter classified. * * *"

"475.01(11): The terms 'real estate' or 'real property' used in subsection (2), shall include leaseholds, assignments of leasehold and subleaseholds thereof, as well as any and every interest or estate in land."

[1]. This is a recognized term used by persons who engaged in the business of buying and selling for others radio and television stations.

Appellant contends that the services performed by Chapman contemplated the assignment of the lease to the real estate and by the terms of the act he was denied the right to compensation.

Appellee asserts to the contrary that what was sold was the radio station either as a going business or incidental to the transfer of a franchise, and that the assignment of the lease was purely incidental to the sale of the business which was many times more valuable than the thing really agreed to be offered for sale. The trial court, on evidence which is not here attacked as inadmissible, found "the procurement of the assignment of the lease was only incidental to the sale of the radio station franchise and equipment," and thus rejected the defense of illegality.

■ We agree. Both parties inform us that there is no Florida case controlling on the interpretation of the Florida statute when applied to such a state of facts. We therefore seek to construe the statute as we believe the courts of that state would if the question were before them. If our conclusion seems to the appellant to depart from what he believes the Florida courts would decide, the choice of forum was his, for unusual though it is in diversity cases, the defendant, the Florida resident, caused the removal to the federal courts of a case filed in the state court by a foreign plaintiff in which it was apparent that the only question was the proper construction of a Florida statute not theretofore passed on by the courts of that state.

Main reliance of the appellee here is on the line of decisions of other jurisdictions which hold that one engaged as a business broker is not required to obtain a real estate license merely because a transfer of realty is involved in the sale of a going business. Such a case is Weingast v. Rialto Pastry Shop, 243 N.Y. 113, 152 N.E. 693, 694. The court, there applying a real estate broker statute to a case in which a business broker sold a restaurant including the six year balance of a lease, which the court said

was "of course, considered of value to the purchaser," said:

"We do not think this provision broad enough to cover, or was intended to cover, every transaction in which an interest in real estate may be part of the subject of transfer. It does not apply to one who exercises the calling of selling or exchanging businesses as going concerns although, as part of the good will, such sales may include the lease of a store or building. One who makes a specialty of procuring purchasers for restaurants, drug stores, grocery stores, and the like as going concerns, where a lease simply goes with the place as a part of the good will, does not become, within this law, a real estate broker. As failure to procure a license is made a crime, the statute must not be extended by implication. These views find support in Reichardt v. Hill, 6 Cir., 236 F. 817, 150 C.C.A. 79, where a similar ordinance was under discussion."

The case of Reichardt v. Hill, cited by the New York Court of Appeals, was decided by the Court of Appeals for the Sixth Circuit and related to a St. Louis city ordinance requiring that persons who negotiated, for a commission, the sale of goods or merchandise obtain a merchandise broker's license. The broker there negotiated the sale of several retail stores which included their stocks of goods. The court there said:

"Now it is difficult to see how such an ordinance as this could have been intended to apply to a transaction of the character we have here. Here were nine grocery stores maintained in nine different localities and designed to serve as many different communities in the city of St. Louis; they apparently comprised separate and distinct outfits, such as fixtures, means and appurtenances, horses and wagons, and stocks of goods, such as were usually required in the conduct and operation of separate

stores; in a word, they were going concerns, and, inferentially, each was possessed of a good will of more or less value. True, the relations of defendants to the buildings, the realty, where the grocery stores were severally maintained and carried on, whether as lessees or owners, do not appear; but the entities, the stores, are none the less distinctive. All these objects are to be treated as a unitary subject, * * The fact that there were articles in each of these stores, say a stock of goods, which if separately considered would fall within the descriptive words of the ordinance, cannot justify the isolation of those articles for the purpose of treating them as the subjects of separate sales; they, like the other things sold, are to be regarded as constituting essential parts of an exceptional and unitary subject-matter of sale; certainly this must be true as respects a comparison of such a sale with the sales contemplated by the ordinance." [236 F. 820.]

██ We have previously stated that such a statute as this "is highly penal, and therefore to be strictly construed." Land Co. of Florida v. Fetty, 5 Cir., 15 F.2d 942, 944. With this guide to construction, we then look at the statute which makes as a condition of its application that the activity of the agent in selling for another an interest in land must be "for a compensation or valuable consideration." It is clear that when the trial court held that the transfer of the lease here was purely incidental, it was holding that the agreed compensation was for the sale of the station and that no *compensation* was paid or agreed to be paid for the incidental transfer of the lease. We think this is the correct interpretation of the statute. The commission was to be paid for the sale of the station, much the most important part of which was the franchise. We think the trial court could correctly conclude that no *compensation was to be paid for the sale* of "any interest in real property."

There is nothing in our case of Wegmann v. Mannino, 5 Cir., 253 F.2d 627, that conflicts with what is decided here.

A strong argument is also made by appellee that the sale of a franchise, which was truly what was involved here, withdraws from the lease its character as realty (see Gibbs v. Drew, 16 Fla. 147), and makes of it simply a part of the franchise. See Ireland v. Tomahawk Light, Telephone & Improvement Co., 185 Wis. 148, 200 N.W. 642. We think we need not place our decision on this ground. Nor do we come to appellee's contention that if applied as sought by appellant to Media Brokers, carrying on their interstate business, it would be void as being repugnant to the Commerce Clause of the Federal Constitution, art. 1, § 8, cl. 3.

The judgment is Affirmed.