■ EATON ASSOCIATES, Respondent, v HIGHLAND BROADCASTING CORP., Appellant. — In an action, *inter alia,* on a contract, defendant appeals from a judgment of the Supreme Court, Westchester County, entered May 20, 1980, which was in favor of plaintiff in the principal amount of $9,837.50, after a nonjury trial. Judgment affirmed, with costs. Plaintiff, Eaton Associates (Eaton), was hired to prepare, present and market a refinancing package for defendant, Highland Broadcasting Corp. (Highland). Highland, the owner of radio stations WHUD and WLNA, was in need of new capital to finance the further development of its FM station, pursuant to a recently acquired FCC license which enabled the station to transmit at a higher power. Eaton prepared a business plan which detailed market share, sales, cash flow, expenses, etc., for Highland to present to potential lenders. Subsequently, as a result of Eaton's activities, whether directly or indirectly, Highland obtained first and second mortgage financing from lending institutions. Defendant contends that Eaton's services required a real estate broker's license, and since Eaton concededly was not licensed, it is barred by section 442-d of the Real Property Law from recovering any compensation for brokerage services. By statute, a real estate broker is required to be licensed (see Real Property Law, § 440-a). Absent such a license, recovery of compensation for services is barred (see Real Property Law, § 442-d; *Gerstein v 532 Broad Hollow Rd. Co.,* 75 AD2d 292). According to subdivision 1 of section 440 of the Real Property Law, a "real estate broker" means "any person, firm or corporation, who * * * negotiates or offers or attempts to negotiate, a loan secured or to be secured by a mortgage or other incumbrance upon * * * real estate". A broker is an agent who " 'bargains or carries on negotiations in behalf of his principal as an intermediary between the latter and third persons' " (see *Gerstein v 532 Broad Hollow Rd. Co., supra,* p 296). Although Eaton did not play a role in formulating the actual terms of either agreement, "A broker 'negotiates' just as much when he brings parties together

in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision" *(Baird v Krancer,* 138 Misc 360, 363; *Salzano v Pellillo,* 4 AD2d 789, 790). However, Eaton's services, including the preparation of a financial plan and the rendering of financial advice to Highland's employees and officers, fall outside the scope of real estate brokerage services. The mortgages were an incidental feature of Eaton's responsibilities, and thus the licensing requirement of section 440-a of the Real Property Law is inapplicable to such services (see *Myer v Jova Brick Works,* 38 AD2d 615; *Dodge v Richmond,* 5 AD2d 593). The purposes of the real estate broker's licensing regulations, i.e., to protect dealers from unlicensed persons acting as brokers and to protect the public from inept, inexperienced persons (see *Small v Marchese,* 98 Misc 2d 295, 296), would not be furthered by requiring compliance from a so-called "financial consultant". Additionally, since the failure to procure a license is a crime (see Real Property Law, § 442-e), article 12-A of the Real Property Law should be strictly construed so as not to encompass every situation in which an interest in real estate may be part of the transaction (see *Reiter v Greenberg,* 21 NY2d 388, 391-392). Since Eaton was not acting as a "broker" within the intent of article 12-A of the Real Property Law, its right to compensation is not defeated by said statute. Mollen, P.J., Hopkins, Weinstein and Thompson, JJ., concur.